Filed 4/28/21  P. v. Bravo CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>RAUL BRAVO et al.,<br><br>　　　Defendants and Appellants. | B304643<br><br>(Los Angeles County<br>Super. Ct. No. BA167679-02)<br><br>ORDER MODIFYING OPINION<br>(NO CHANGE IN APPELLATE JUDGMENT) |

THE COURT:

It is ordered that the opinion filed herein on April 21, 2021 be modified as follows:

On page 1, Richard J. Kirschner and Alan Schneider, Judges, is changed to Richard H. Kirschner and Alan Schneider, Judges.

There is no change in the appellate judgment.

_____

PERLUSS, P. J.　　　　　SEGAL, J.　　　　　FEUER, J.

Filed 4/21/21  P. v. Bravo CA2/7 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B304643 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA167679-02) |
| v. | |
| RAUL BRAVO et al., | |
| Defendants and Appellants. | |

APPEALS from orders of the Superior Court of Los Angeles County, Richard J. Kirschner and Alan Schneider, Judges. Affirmed.

John Steinberg, under appointment by the Court of Appeal, for Defendant and Appellant Raul Bravo.

Jennifer A. Gambale, under appointment by the Court of Appeal, for Defendant and Appellant Vincent Martinez.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant

Attorney General, Idan Ivri and Allison H. Chung, Deputy Attorneys General for Plaintiff and Respondent.

_____

Raul Bravo and Vincent M. Martinez appeal from postjudgment orders summarily denying their petitions for resentencing under Penal Code section 1170.95[1] as to their prior convictions of first degree murder.  Because the jury was not instructed on felony murder or the natural and probable consequences doctrine, Bravo and Martinez are not eligible for relief.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.   *The Killing*

We described the killing of Edward Gonzalez in our prior opinion in *People v. Bravo* (Jan. 2, 2001, B135531) [nonpub. opn.] (*Bravo I*):  "Gonzalez was a member of the '18th Street' gang, while [Bravo and Martinez] admitted belonging to the rival 'Burlington Locos' gang.  Gonzalez was shot in the back after running out of a liquor store which he had visited in the company of four companions.  Before he died Gonzalez told a witness that 'Burlingtons' shot him.  Eyewitnesses watched as Martinez observed the car in which Gonzalez rode approach the store, then confer with a man fitting Bravo's description.  Witnesses placed Martinez inside the store shortly before Gonzalez was shot, and one eyewitness identified Martinez as the man who shot Gonzalez.  A witness saw Bravo in the store wearing a flannel

_____

[1]      All statutory references are to the Penal Code.

shirt, just before Gonzalez was shot.  Another witness testified that a man in a flannel shirt fitting Bravo's description fired the shots (two, followed by a pause, and then three more).  Just before entering the store a man fitting Bravo's description had asked men leaving the store 'where they were from'—a widely used gang challenge.  Other evidence established that [Bravo and Martinez] were together at Bravo's apartment, located near the liquor store, both shortly before the shooting and soon after it.  An eyewitness who knew Bravo heard the shots, and saw Bravo and Martinez run from the scene and enter Bravo's apartment complex."

B.     *The Information, Jury Instructions, Convictions, and Appeals*

Bravo and Martinez were jointly charged with murder (§ 187, subd. (a)), and the information specially alleged each used a firearm in the commission of the offense (§ 12022.5, subd. (a)) and a principal was armed in the commission of the offense (§ 12022, subd. (a)(1)).  The trial court[2] instructed the jury with CALJIC No. 3.01 on aider and abettor liability; CALJIC Nos. 8.10 and 8.11 on murder with malice aforethought and express and implied malice; and CALJIC Nos. 8.20 and 8.30 on first and second degree murder.  The trial court did not instruct the jury on either felony murder or the natural and probable consequences doctrine.

The jury found Bravo and Martinez guilty of first degree murder and found the allegations true that a principal was

---

[2]     Judge Michael M. Duffey.

armed in the commission of the offense.  The trial court sentenced both Bravo and Martinez to 26 years to life in prison.

On appeal, Bravo and Martinez argued there was insufficient evidence to support the verdicts and their attorneys provided ineffective assistance of counsel.  We rejected Bravo's and Martinez's contentions and affirmed the convictions.  We explained as to the sufficiency of the evidence, "This evidence met the constitutional requirement that guilt be shown by evidence sufficient to persuade reasonable jurors beyond a reasonable doubt.  It showed that [Bravo and Martinez] went forth together, armed with a loaded gun, in search of a rival gang member, found Gonzalez, followed him into the store, pursued him out of the store, and shot him in the back as he fled.  This was strong evidence of a planned, purposeful killing, motivated by gang rivalry—in short a premeditated, deliberate murder.  The same body of evidence sufficiently showed that [Bravo and Martinez] aided and abetted one another.  They met at Bravo's residence before the crimes, conferred on the street after spotting Gonzalez, together followed Gonzalez into the store, together pursued him out, and together fled the scene.  This is compelling direct evidence that they encouraged and assisted each other in carrying out the murder, and strong circumstantial evidence that each knew of the intended crime." (*Bravo I, supra*, B135531.)

C.    *The Petitions for Resentencing*

On December 16, 2019 Bravo, representing himself, filed a form petition for resentencing and supporting declaration seeking to vacate his murder conviction and be resentenced in accordance with recent statutory changes relating to accomplice liability for murder.  In his petition, Bravo declared he "was convicted of 1st

4

or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine" and he "could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019." He did not check the box on the form stating he was not the actual killer or the box stating he did not act with the intent to kill. He likewise did not check the box stating he was not a major participant in the felony and did not act with reckless indifference to human life. Martinez filed an identical petition. Both petitions requested the appointment of counsel.

Bravo's petition for resentencing was assigned to Judge Richard Kirschner.[3] Judge Kirschner did not appoint counsel for Bravo or hold a hearing. On January 9, 2020 the court summarily denied Bravo's petition, stating Bravo "as a matter of law has failed to make a prima facie showing that he falls within the provisions of section 1170.95." The court noted it considered the record of conviction, including our opinion in *Bravo I*. In denying the petition, the court reasoned, "[Bravo] and a codefendant were tried for the deliberate murder of a rival gang member. The evidence showed that both defendants proceeded together, armed with a loaded gun, in search of a rival gang member, found that gang member, followed him into [the] store, pursued him out of the store, and shot him in the back as he fled. The evidence persuaded jurors beyond a reasonable doubt of a planned, purposeful killing, motivated by gang rivalry, in short a premeditated, deliberate murder. That same evidence

---

[3] Judge Duffey had retired from the Los Angeles Superior Court by the time Bravo and Martinez filed their petitions for resentencing.

5

demonstrated that both defendants directly aided and abetted one another in that murder."

Martinez's petition for resentencing was assigned to Judge Alan Schneider. On April 4, 2019 Judge Schneider appointed counsel for Martinez. The People filed a response to Martinez's petition in which they argued section 1170.95 was unconstitutional and the jury was not instructed on either felony murder or the natural and probable consequences doctrine. The People attached to their response the jury instructions provided to the jury at trial. Martinez's attorney filed a reply brief arguing the statute is constitutional. The court held a hearing on December 17, 2019, at which counsel appeared and submitted on the papers. Martinez made a written waiver of his appearance. The superior court denied the petition, explaining Martinez "simply is not eligible for resentencing based on the record in the case. . . . He appears to have been a straight aider and abettor, so he does not qualify."

Bravo and Martinez timely appealed.

## DISCUSSION

A. *Senate Bill No. 1437*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Sen. Bill 1437), effective January 1, 2019, amended the felony murder rule and eliminated the natural and probable consequences doctrine as it relates to murder through the amendment of sections 188 and 189. (See *People v. Gentile* (2020) 10 Cal.5th 830, 842-843, 847-848.) New section 188, subdivision (a)(3), provides, "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice

6

aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime."  New section 189, subdivision (e), in turn, limits the felony-murder rule exception to the malice requirement to circumstances where the People prove the defendant "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Senate Bill 1437 also provides a procedure in new section 1170.95 for an individual convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder under Senate Bill 1437's changes to sections 188 and 189.  (Sen. Bill 1437 (2017-2018 Reg. Sess.) § 4; see *People v. Gentile*, *supra*, 10 Cal.5th at p. 847.)  As we explained in *People v. Verdugo* (2020) 44 Cal.App.5th 320, 327 (*Verdugo*), review granted March 18, 2020, S260493, "If the petition contains all required information, section 1170.95, subdivision (c), prescribes a two-step process for the court to determine if an order to show cause should issue:  'The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.  If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response . . . and the petitioner may file and serve a reply . . . .  If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause.'" (Accord, *People v. Rodriguez* (2020) 58 Cal.App.5th 227, 237, review granted Mar. 10, 2021, S266652; *People v. Perez* (2020) 54 Cal.App.5th 896, 903 (*Perez*), review granted Dec. 9, 2020,

7

S265254; but see *People v. Cooper* (2020) 54 Cal.App.5th 106, 123, review granted Nov. 10, 2020, S264684 [once the trial court determines the petition contains the required information, the court performs a single prima facie review, and if the defendant makes a prima facie showing of entitlement to relief, the court issues an order to show cause].)[4]

In determining whether the petitioner has made a prima facie showing he or she is entitled to relief under section 1170.95, subdivision (c), "[t]he trial court should not evaluate the credibility of the petition's assertions, but it need not credit factual assertions that are untrue as a matter of law—for example, a petitioner's assertion that a particular conviction is eligible for relief where the crime is not listed in subdivision (a) of section 1170.95 as eligible for resentencing. Just as in habeas corpus, if the record 'contain[s] facts refuting the allegations made in the petition . . . the court is justified in making a credibility determination adverse to the petitioner.' [Citation.] However, this authority to make determinations without

---

[4]    The Supreme Court in *People v. Lewis* (2020) 43 Cal.App.5th 1128, review granted March 18, 2020, S260598, granted review on the following questions:  "(1) May superior courts consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under Penal Code section 1170.95?  (2) When does the right to appointed counsel arise under Penal Code section 1170.95, subdivision (c)[?]"  (Supreme Ct. Minutes, Mar. 18, 2020, p. 364.) Bravo has requested we take judicial notice of the People's answer to the briefs of amici curiae filed in *Lewis*.  On February 1, 2021 we denied Bravo's request.  We therefore do not consider the argument Bravo presents in his reply brief based on the position taken by the People in *Lewis*.

conducting an evidentiary hearing pursuant to section 1170.95, subd. (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion . . . ." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 980; accord, *Perez, supra*, 54 Cal.App.5th at pp. 903-904, review granted.)

After issuing an order to show cause, the trial court must hold a hearing "to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts." (§ 1170.95, subd. (d)(1).) If a hearing is held, "[t]he prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3); see *People v. Rodriguez, supra*, 58 Cal.App.5th at p. 237, review granted.) The prosecution has the burden of proving beyond a reasonable doubt the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3); *Rodriguez*, at p. 237.)

B.    *The Trial Court Did Not Err in Denying Bravo's and Martinez's Petitions for Resentencing*

Martinez contends the superior court conducted improper factfinding in determining he was a direct aider and abettor, and further, the trial court's instruction on implied malice allowed the jury to convict him under the natural and probable consequences doctrine even though the instruction was not given.[5] Bravo contends the superior court erred when it summarily denied his petition for resentencing without first appointing counsel because

---

[5]    Bravo filed a joinder in Martinez's opening brief.

9

he made a prima facie showing in his petition that he falls within the provisions of section 1170.95.  Neither contention has merit.  The jury was not instructed on and therefore could not have convicted Bravo or Martinez of either felony murder or murder under the natural and probable consequences doctrine.  Further, the facts do not support either theory.[6]

Bravo urges us to follow the First District's holding in *People v. Cooper, supra*, 54 Cal.App.5th at page 123, review granted, which rejected our conclusion in *Verdugo* that section 1170.95 only requires appointment of counsel after the superior court determines as part of its first prima facie review the petitioner is eligible for relief.  The Court of Appeal in *Cooper* concluded "a petitioner is entitled to counsel upon the filing of a facially sufficient petition for relief that requests counsel be appointed." (*Cooper*, at p. 123.)  Bravo has not presented any persuasive reasons for us to deviate from our opinion in *Verdugo*, and we decline his invitation to do so.

As we explained in *Verdugo*, to determine whether the petitioner is eligible for relief, the court may examine "documents in the court file or otherwise part of the record of conviction that are readily ascertainable," including "the complaint, information or indictment filed against the petitioner; the verdict form or factual basis documentation for a negotiated plea; and the abstract of judgment." (*Verdugo*, *supra*, 44 Cal.App.5th at

---

[6]	We review the superior court's ruling that Bravo and Martinez were ineligible for relief as a matter of law de novo. (*People v. Murillo* (2020) 54 Cal.App.5th 160, 167, review granted Nov. 18, 2020, S264978; *Perez, supra*, 54 Cal.App.5th at p. 904, review granted.)

10

pp. 329-330, review granted.)  We added, "The record of conviction might also include other information that establishes the petitioner is ineligible for relief as a matter of law because he or she was convicted on a ground that remains valid notwithstanding Senate Bill 1437's amendments to sections 188 and 189 (see § 1170.95, subd. (a)(3))." (*Id*. at p. 330.)  Further, "[a] court of appeal opinion, whether or not published, is part of the appellant's record of conviction." (*Id*. at p. 333.)

The jury instructions given by the trial court are also part of the record of conviction.  (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, review granted Sept. 23, 2020, S263939; *People v. Edwards* (2020) 48 Cal.App.5th 666, 674, review granted July 8, 2020, S262481.)  Although the jury here was instructed on aider and abettor liability, it was not instructed on either felony murder or the natural and probable consequences doctrine. Further, Bravo and Martinez were not charged with nor was the jury instructed on a target crime on which the natural and probable consequences doctrine could be predicated.  As the Court of Appeal in *Soto* concluded in affirming the trial court's summary denial of the defendant's section 1170.95 petition, "[T]he jurors were not provided any instruction on which they could have found [the defendant] guilty of murder under [the natural and probable consequences] doctrine.  Rather, under the instructions, the jury necessarily found Soto culpable for murder based on his own actions and mental state as a direct aider and abettor of murder." (*Soto*, at p. 1055;[7] see *Edwards*, at p. 675

---

[7]    The *Soto* court rejected the argument that the reference to the "'natural consequences'" of an intentional act in CALJIC No. 8.11 on implied malice showed the defendant had been

11

[affirming summary denial of § 1170.95 petition where jury not instructed on felony murder or the natural and probable consequences doctrine].)

Here, in the absence of instructions on felony murder or the natural and probable consequences doctrine, the jury could have convicted Bravo and Martinez as either the shooter or a direct aider and abettor of the shooter, but not, as suggested by Bravo and Martinez, based on a theory of liability that is no longer valid following Senate Bill 1437's amendments to sections 188 and 189. We therefore do not credit the averments to the contrary in the petitions filed by Bravo and Martinez stating they were convicted based on a theory of felony murder or the natural and probable consequences doctrine.  (*Perez, supra*, 54 Cal.App.5th at pp. 903-904, review granted; *People v. Drayton, supra,* 47 Cal.App.5th at p. 980.)

Further, the underlying facts show Bravo and Martinez were convicted as direct aiders and abettors (or as the shooter). As we explained in *Bravo I, supra*, B135531, Bravo and Martinez "went forth together, armed with a loaded gun, in search of a rival gang member, found Gonzalez, followed him into the store, pursued him out of the store, and shot him in the back as he fled. This was strong evidence of a planned, purposeful killing,

---

convicted of murder based on the natural and probable consequences doctrine.  (*People v. Soto, supra*, 51 Cal.App.5th at p. 1059, review granted ["The 'natural consequences' language in the instruction for second degree murder does not transform Soto's conviction into one for murder under the natural and probable consequences doctrine within the meaning of section 1170.95."].)  We agree with our colleagues in *Soto* and reject this argument by Martinez.

12

motivated by gang rivalry—in short a premeditated, deliberate murder."

Because Bravo failed to make the initial prima facie showing for relief under section 1170.95, subdivision (c), he was not entitled to appointed counsel or a hearing. (*People v. Tarkington* (2020) 49 Cal.App.5th 892, 901-902, review granted Aug. 12, 2020, S263219 [because the court summarily denied the petition at the first prima facie review stage, "the appointment of counsel was not statutorily required by section 1170.95"]; *Verdugo, supra*, 44 Cal.App.5th at pp. 332-333, review granted ["If, as here, the court concludes the petitioner has failed to make the initial prima facie showing required by subdivision (c), counsel need not be appointed."]; *People v. Lewis, supra*, 43 Cal.App.5th at p. 1140, review granted ["Given the overall structure of the statute, we construe the requirement to appoint counsel as arising in accordance with the sequence of actions described in section 1170.95 subdivision (c); that is, after the court determines that the petitioner has made a prima facie showing that petitioner 'falls within the provisions' of the statute, and before the submission of written briefs and the court's determination whether petitioner has made 'a prima facie showing that he or she is entitled to relief.'"].)

## DISPOSITION

The orders denying Bravo's and Martinez's petitions for resentencing under section 1170.95 are affirmed.

FEUER, J.

We concur:


PERLUSS, P. J.


SEGAL, J.